Argued and submitted November 3, 1992, decision of Court of Appeals reversed; judgment of circuit court reversed and case remanded to circuit court for new trial January 22, 1993

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## ARTHUR DUDLEY KELLER,
*Petitioner on Review.*

## (CC C89-10-35670; CA A65541; SC S39111)

844 P2d 195

274

Peter Gartlan, Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the petition was Sally L. Avera, Public Defender, Salem.

Michael C. Livingston, Assistant Attorney General, Salem, argued the cause for respondent on review.

Before Carson, Chief Justice, and Peterson, Van Hoomissen, Fadeley, Unis, and Graber, Justices.

GRABER, J.

## GRABER, J.

Defendant was convicted of sexual abuse in the first degree, ORS 163.427,[1] involving a five-year-old child. On appeal, he argued that the trial court erred in permitting a medical doctor to testify, on direct examination during the state's case-in-chief, that the child had not been "coached" or "led" when she made the allegations against defendant and in denying defendant's motion to strike that testimony. The Court of Appeals affirmed defendant's conviction without opinion. *State v. Keller*, 110 Or App 635, 823 P2d 457 (1992). We reverse the decision of the Court of Appeals and the judgment of the circuit court and remand the case to the circuit court for a new trial.

Defendant's wife provided licensed day care to children in the home that she and defendant occupied. Late one afternoon in August 1989, defendant's wife asked defendant, who had just returned home from his place of employment, to watch three children while she ran an errand with two other children. Defendant and two of the children, including the alleged victim in this case, were on the lower level of the split-level house. About five minutes after defendant's wife left the house, the mother of one of the children arrived to pick up her child, the alleged victim. While waiting for defendant's wife to return with her other child, the child's mother conversed with defendant.

That night, the child told her mother that, during the time defendant and the children were alone together, defendant had touched her genital area. The mother immediately reported the allegation to the Multnomah County sheriff's office. The next day she took the child to the family's pediatrician to be examined. The doctor found no physical evidence of sexual abuse.

---

[1] ORS 163.427 provides in part:

"(1) A person commits the crime of sexual abuse in the first degree when that person:

"(a) Subjects another person to sexual contact and:

"(A) The victim is less than 14 years of age[.]

"* * * * *

"(2) Sexual abuse in the first degree is a Class B felony."

The mother then took the child to the Child Abuse Response and Evaluation Services unit (C.A.R.E.S.) at Emanuel Hospital in Portland. A trained interviewer at C.A.R.E.S. conducted a videotaped interview with the child and prepared a written report of the interview. Dr. Bays, a medical doctor, watched part of the interview from behind a one-way mirror and later viewed the videotape of the entire interview.

Defendant was arrested and charged with sexual abuse in the first degree. During trial, the state called Dr. Bays as a witness for the prosecution.[2] After stating her educational and professional qualifications,[3] Dr. Bays testified in part as follows:

"[PROSECUTOR]: Now, Doctor, in your capacity as a C.A.R.E.S. physician, did you have occasion to review materials that would lead you to formulate a diagnostic impression concerning [the child]?

"[WITNESS]: Yes, I did.

"[PROSECUTOR]: First of all, without explaining what your diagnosis was of [the child], can you tell us what materials you relied on in reaching that decision?

"[WITNESS]: Yes. Well, we had [the child] come for [an] interview * * *. * * *

"In her case, she had already had a thorough exam by a pediatrician who is very good. He was sure that her exam was normal.

"* * * * *

"[PROSECUTOR]: Have you reviewed [the pediatrician's] report?

"[WITNESS]: Yes.

"* * * * *

"[PROSECUTOR]: What else did you rely on in reaching your diagnosis of [the child]?

---

[2] The child also testified at trial during the state's case-in-chief.

[3] Dr. Bays stated that she was a board-certified pediatrician, that she had worked several years at Kaiser Hospital in San Diego, that she had spent five and one-half years in private practice in Los Angeles, that she she had worked at Emanuel Hospital since 1984, and that she was currently medical director of the Child Abuse Response and Evaluation Services program there, among other duties. She testified that she was the author of several scholarly publications relating to her specialty, "child abuse and neglect, and also drug affected infants."

"[WITNESS]: In this case at our program, we relied primarily on what we call the history and medical evaluation. * * *

"* * * * *

"Then the physical exam. * * *

"[PROSECUTOR]: Did you obtain a history from anyone else other than the child?

"[WITNESS]: Yes. Her mother.

"[PROSECUTOR]: Did you rely on that as well as what the child said in reaching your diagnosis?

"[WITNESS]: Yes.

"* * * * *

"[PROSECUTOR]: What was [the interviewer's] job in [the interview with the child]?

"[WITNESS]: Her job was to talk to the child about the alleged incident of possible sexual abuse, and to try to gather as much information so we can reach a conclusion about whether this child has been coached, been led, is fantasizing, or is indeed describing something that happened to her own body.

"[PROSECUTOR]: Let's digress for just a moment.

"You mentioned some things, whether a child has been coached, led, is fantasizing. Are these things that you look for and are concerned about when you're formulating a diagnosis?

"[WITNESS]: Yes.

"[PROSECUTOR]: Is this something that you had in mind when you formulated the diagnosis of [the child]?

"[WITNESS]: Yes.

"* * * * *

"[PROSECUTOR]: Dr. Bays, did you rely on anything else? We know that you relied on the discussion with [the child's] pediatrician, on the review of the videotape [of the interview], on the written report [by the interviewer]. Anything else?

"[WITNESS]: We also had a law enforcement report * * *.

"[PROSECUTOR]: Are these all things commonly relied upon by a physician in your specialty?

"[WITNESS]: Yes.

"[PROSECUTOR]: Were you able to reach a diagnosis as to whether [the child] was sexually abused or not?

"[WITNESS]: Yes.

"[PROSECUTOR]: Will you tell us what your —"

At that point in Dr. Bay's testimony, defense counsel objected "on foundation grounds." The trial court asked counsel to be "more specific as to the foundation." Defense counsel replied:

"Yes, Your Honor. Dr. Bays has shown expertise in areas where she has published medical exams of children who have alleged child abuse and also substance abuse, and children who are considered to be abused or involved in substance abuse, and also techniques for interviewing children who are allegedly sexually abused.

"I don't know that Dr. Bays has been specifically shown to be an expert in diagnosing whether or not a child has been abused, as the prosecutor has pointed out, whether or not a child has been coached or prepared."

The court overruled the objection, and the testimony continued:

"[PROSECUTOR]: Dr. Bays, would you tell us, please, what your diagnosis is concerning [the child]?

"[WITNESS]: Yes. I felt that [the child] had given a clear history of an episode of sexual touching which had happened to her own body. There was no evidence of leading or coaching or fantasizing."

The prosecutor asked Dr. Bays about the pediatrician's report, then returned to the subject of the interview:

"[PROSECUTOR]: Now, let me ask you some other questions about the C.A.R.E.S. interview tape. Tell us what kind of things you look for that you have said that you look to see if a child has been coached or led, and would you tell us what sort of things are danger signals of that, and then what you looked for in the tape, and why you think that [the child] wasn't led or coached."

In reply, the witness described to the court the types of behavioral evidence on which she normally relied to determine whether a child had been coached: a "rote" style of recitation by a child, a child's ability to supply "peripheral" details of the alleged incident, a child's tendency to correct the

interviewer about the facts, and various emotional responses by a child. She then stated that, during the interview of the child in this case, the child was "obviously telling you about what happened to her body" and was "remembering what happened."

Defense counsel made this objection:

"Your Honor, I would renew my objection on the basis that this is expert testimony on psychology and not medical terms, or on specifically child abuse interviewing."

The trial court excused the jury and heard argument by the parties on the admissibility of the witness' testimony on the subject of whether the child had been coached. The prosecutor spoke first:

"First of all, in [*State v. Milbradt*, 305 Or 621, 756 P2d 620 (1988)], which I think is the most current case — * * *

"In *Milbradt* it simply talks about in that case [a witness'] testifying about the credibility of the two victims, both of whom were mentally impaired, or dull normal, or low normal teenage girls.

"In that case, the doctor testified directly as to their credibility as witnesses in court. And the court said there that is simply not permissible. And, of course, we are not doing that here.

"The court then goes on to address sex abuse syndrome, and does not — what it does is it acknowledges the fact that in [*State v. Middleton*, 294 Or 427, 657 P2d 1215 (1983),] that was permitted, but that *Middleton* was decided before [*State v. Brown*, 297 Or 404, 687 P2d 751 (1984)].

"And the *Milbradt* court says [that] in *State v. Brown*, there is a test set out, foundational test, and that that must be met before this type of evidence could be admitted."

After a discussion between the court and the prosecutor on the facts and holdings of the cited cases, the court elicited argument from defense counsel, who replied:

"Yes, Your Honor.

"I would request that any further foundation that needs to be laid be done [in the presence of the jury].

"Secondly, I don't believe under *Brown* that the foundation requirements have been met at this point. * * * I would cite the court to [that portion of *Milbradt* which states: ']We

suggest that in future cases involving syndrome testimony, full foundations be established if indeed it can be shown that so-called "typical" reactions can be shown to be either typical or reliable.[']

"While the particular instance in this case may not fit the technical definition of syndrome, it is certainly in the vein of *Milbradt* and in the vein of the typical reactions that the court in *Milbradt* was discussing.

"For those reasons, I believe that *Milbradt* does apply, and any sort of further testimony having to do with typical reactions of children who are sexually abused does need to meet the test to show they're typical and reliable, and also that the factors cited in *Brown* are met to a degree that satisfies the court that the expert testimony is admissible as scientific evidence."

The prosecutor responded in part:

"The only thing I would add is, not once, to my recollection, has the doctor discussed typical reactions of sexually abused children with the jury. She was not in the process of doing that when counsel objected."

Defense counsel responded in part:

"Your honor, I would beg to differ. * * * Dr. Bays was testifying that usually children act this way, usually they don't act this way. I think that's a typical reaction that she was reciting at that point."

The court again briefly reviewed the witness' qualifications and the process that she undertook with regard to the alleged victim in this case. The court then stated:

"Here the testimony of Dr. Bays isn't going strictly to the identification of the abuser. Although, it does go to that, but it also goes to the question of whether there was abuse.

"But she gave that opinion without objection.[4] Now we're going further, and the state is offering her testimony on the question of the truthfulness of the child's statements, and Dr. Bays' analysis and opinions of why that testimony is truthful.

"And on that point, there has been no foundation laid using the seven steps in *Brown*. And I have no idea whether a foundation can be laid. And even if one can be, I have second

---

4 In fact, as quoted above, defendant did object, but the objection was overruled.

serious doubts about it being received because this is like polygraph testimony, which has been rejected. Even though you could get scientists that come in and will testify to all of the seven elements under the *Brown* analysis * * *, it's been rejected by the courts because it intrudes to the very heart of the jury system.

"And that's allowing one witness to testify about the truthfulness of another. And you will both recall some pretty serious admonitions by the court recently about allowing one witness to testify about the truthfulness of the other."

After a brief discussion by the court on the applicability of *State v. Brown, supra,* to various types of scientific evidence, defense counsel stated:

"Your honor, I still think that the bottom line is, Dr. Bays is testifying about whether or not sexual contact happened through the testimony of [the child]. I would say that she in that exercise is commenting on the truthfulness or untruthfulness of testimony in this case.

"The basis of her opinion, she told us, was on several reports, but also on the C.A.R.E.S. interview tape, which has already not only been introduced as evidence but introduced as testimony and shown to the jury. So she is commenting on testimony that has been before the jury.

"And as scientific evidence about whether or not this occurred, it still basically is saying, [']I think [the child] is telling the truth, and that's my opinion. My expert opinion based on scientific facts.[']

"Because of that, I think the *Brown* test must be met, and I don't think it has been met. That's our basic position.

"* * * * *

"So far as the expert opinion on what is virtually the truthfulness of the interview by [the child], I don't think that would be admissibile on those grounds."

Shortly thereafter, the court adjourned for the weekend.

When the proceedings resumed the following week, the prosecutor informed the court that he did not intend to question Dr. Bays any further on the issue in contention. Defense counsel responded by requesting "a ruling on my objection to a line of questioning having to do with whether or not the victim in this case was coaxed [*sic*] or prepared in any

way. \* \* \* [A]nd \* \* \* I request a jury instruction in this regard of that testimony." The following exchange took place:

"[PROSECUTOR]: Judge, I think — do I need to be heard, Judge?

"[THE COURT]: I know what you are going to say, that it came in. That came in without objection. I have an opinion that it is possibly admissible, if the proper foundation is laid, having reviewed the *Brown* standard and thought about it. I believe the state could lay that foundation using Dr. Bays because I'm familiar with her background, even though there hasn't been testimony on all of it. So, I'm going to deny your motion to strike. We'll leave that in the record.

"[DEFENSE COUNSEL]: As a matter of the record then, Your Honor, I would just state that I believe the objection was timely made. The objection was to the line of questioning that I pointed out, that being questions regarding whether or not the victim was coaxed or prepared.

"[THE COURT]: Well, that objection has become moot because the state is withdrawing the last question and not going to proceed with that matter any further.

"[DEFENSE COUNSEL]: I understand that; however, there are some questions in the record which are the basis for that or that line of questions, basically.

"[THE COURT]: And that's what I have to consider, your motion to strike that testimony, and I'm going to deny the motion because the testimony came in without objection, and I think that probably it would be admissible. \* \* \*

"[DEFENSE COUNSEL]: Again, just as a matter of the record, Your Honor, I would cite the court to *State vs. Milbradt*, where there was error not to instruct the jury to totally disregard the testimony. And in *Milbradt*, in specific, the testimony was in regard to evidence or indicators of [deception]. I believe that is almost exactly what Dr. Bays is testifying to. The Supreme Court in *Milbradt* found that that was tantamount to testifying about or bolstering the credibility of another witness. Our opinion is that this is exactly what went on Friday in Dr. Bays' testimony in answer to the line of questions regarding whether or not the victim was prepared or coaxed or prepared, practiced in any way.

"[THE COURT]: I'm denying the motion to strike."

Dr. Bays concluded her testimony; she made no further statements about whether the child had been

coached. Later that day, defense counsel renewed his objection to the admission of Dr. Bays' testimony in "areas beyond [her] expertise" for which "there was not a proper foundation" and to the fact that "she testified as to the credibility of [the child]." The court again overruled the objections.

On appeal, defendant argued that the trial court erred in permitting Dr. Bays to testify about the child's credibility and in refusing to strike that testimony. We turn first to the issue whether defendant preserved that claim of error. *See* ORAP 5.45(2) (generally, matter assigned as error will not be considered on appeal unless preserved in the lower court).

■     In order for a ruling on evidence to be considered as an assignment of error on appeal, a timely objection to, or motion to strike, the evidence must appear on the record. OEC 103(1)(a).[5] An objection is "timely" if it is made as soon as its applicability to the offered evidence is known to the opponent of the evidence. *Blanton v. Union Pacific Railroad Co.*, 289 Or 617, 623, 616 P2d 477 (1980). An objection need not necessarily be made to the first question in a series of foundation questions, because in that situation the court often will have no basis properly to assess the admissibility of the evidence. *See* I Wigmore, Evidence 801, § 18 (1983) (stating that principle).

■■     Here, defendant first objected when Dr. Bays was asked to give her "diagnosis as to whether [the child] was sexually abused." In order for him to preserve the issue that he seeks to raise here, it was not necessary for him to object earlier while Dr. Bays was being questioned more generally about the "types of things" on which she relied "in reaching [her] diagnosis of the child." Defendant's objection was timely.

---

[5] OEC 103(1)(a) provides in part:

"Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and:

"(a) In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection * * *[.]"

An objection to offered evidence also must state the specific ground of the objection. OEC 103(1)(a). This court stated in *State v. Hitz*, 307 Or 183, 766 P2d 373 (1988), that, in making an objection to evidence, raising the issue at trial ordinarily is essential; identifying a source for a claimed position is less so; and making a particular argument is even less so. 307 Or at 188.

In his initial objection to the question put to Dr. Bays, defendant raised the issue of the admissibility of the testimony. Although he did not identify any source for his argument, he argued that the testimony was inadmissible because a sufficient foundation had not been laid to establish Dr. Bays' expertise in the area of whether a child has been "coached or prepared." In renewing his objection, defendant again raised the issue of admissibility; at that time he cited sources and made additional arguments in support of his position, in particular the argument that the objected-to portion of Dr. Bays' testimony was an impermissible comment on the child's credibility. Defendant sufficiently stated the grounds of his objections.

Finally, defendant properly made a motion to strike the testimony. *See Hryciuk v. Robinson*, 213 Or 542, 569, 326 P2d 424 (1958) (where a question asked a witness is unobjectionable, but the answer produces improper testimony, an objection to the question will not extend to the answer; a motion to strike must be made).

We conclude that defendant preserved the claimed error for appellate review. We turn next to the merits of defendant's claim.

■ This court repeatedly has held that, "in Oregon, a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth. We reject testimony from a witness about the credibility of another witness." *State v. Middleton, supra*, 294 Or at 438. *See Powers v. Officer Cheeley*, 307 Or 585, 596, 771 P2d 622 (1989) (witness may not testify that, if certain testimony were given by another witness, it would be "fabrication"); *State v. Isom*, 306 Or 587, 591-92, 761 P2d 524 (1988) (witness may not testify that another witness was lying). Furthermore, this

rule applies whether the witness is testifying about the credibility of the other witness in relation to the latter's testimony at trial or is testifying about the credibility of the other witness in relation to statements made by the latter on some other occasion or for some reason unrelated to the current litigation. *See State v. Milbradt, supra,* 305 Or at 625-30 (error to allow psychotherapist to testify that prior interview with complaining witnesses revealed no "evidence of deception"; psychotherapist may not give an opinion on whether a witness is "credible").

■     Dr. Bays testified on direct examination during the state's case-in-chief that "[t]here was no evidence of leading or coaching or fantasizing" during the child's interview at C.A.R.E.S. and that, in that interview, the child was "obviously telling you about what happened to her body." Each of those statements amounts to testimony that the child was credible.

Neither is the situation here like that found in *State v. Odoms,* 313 Or 76, 829 P2d 690 (1992). In that case, the defendant argued that the out-of-court statements of a non-witness made to a witness at trial about the credibility of the defendant were inadmissible under the rule established in *State v. Middleton, supra.* This court disagreed, concluding that that rule precluded only testimony by one *trial* witness about the credibility of another *trial* witness. *State v. Odoms, supra,* 313 Or at 81-82.

Here, by contrast, a trial witness, Dr. Bays, testified about the credibility of another trial witness, the child. Once again, we repeat that a witness may not testify about the credibility of another witness. The trial court erred in admitting that testimony and in denying defendant's motion to strike it.

■     Finally, we turn to the question whether the trial court's erroneous admission of the evidence requires reversal. Under Oregon law,

"a verdict against a criminal defendant may be affirmed notwithstanding trial error if the error did not affect a 'substantial right' of the defendant. OEC 103(1). This court has interpreted this to mean that the verdict may be affirmed if there is 'little likelihood that the error affected the verdict.'

*State v. Hansen*, 304 Or 169, 180-81, 743 P2d 157 (1987); *see also State v. Miller*, 300 Or 203, 220-22, 709 P2d 225 (1985)[, *cert den* 475 US 1141 (1986)]." *State v. Isom, supra*, 306 Or at 595-96.

*See also State v. Phillips*, 314 Or 460, 471-73, 840 P2d 666 (1992) (applying that rule); *State v. Williams*, 313 Or 19, 56, 828 P2d 1006 (1992) (explaining same); *State v. Walton*, 311 Or 223, 230-31, 809 P2d 81 (1991) (describing constitutional basis for Oregon doctrine and contrasting rule under federal constitution).

Dr. Bays was one of four witnesses who appeared for the state. The state's other witnesses were the child, the child's mother, and a Multnomah County deputy sheriff who was assigned to investigate the report of sexual abuse. The child testified to the incident of sexual abuse. The child's mother testified about her own observations at the day care center on the day of the incident, about the circumstances of the child's report to her of the incident, and about her actions in response to that report. The deputy's testimony consisted of a brief account of her interview with defendant at the sheriff's office.[6]

Of the state's witnesses, Dr. Bays was the last to testify. She is a medical doctor with extensive professional experience in the area of child sexual abuse, and she testified in an authoritative and detailed manner about that subject. Her comment on the child's credibility was part of that testimony and presumably was persuasive to the trier of fact. Considered in the context of the record as a whole, the issue of the child's credibility was critical to the outcome of this case. For those reasons, we cannot say with certainty that there is "little likelihood" that Dr. Bays' testimony about the child's credibility affected the jury's verdict in this case. Accordingly, we conclude that the admission of that testimony prejudiced defendant and requires reversal.

■ The state argues that the admission of the disputed testimony in this case, if error, does not require reversal,

---

[6] Defendant testified on his own behalf. The defense also called defendant's wife, two character witnesses, and a deputy sheriff who testified briefly about the child's mother's initial report of the incident.

because defendant "invited" the admission of Dr. Bays' testimony. The state contends that "defendant's theory of the case and his initial objection to [Dr. Bays' testimony] introduced into the case the specific question whether the victim's complaint of abuse was the product of coaching" and that the state was "entitled to rebut defendant's theory of the case." On this record, we disagree.

Neither party mentioned the subject of coaching during opening statements to the jury. Before presenting the state's first witness and outside the presence of the jury, defense counsel argued to the court that he "would object to the fact that the alleged victim in the case would be present [during her mother's testimony], and therefore, would be coached or further prepared for her own testimony."[7] The first mention of "coaching" in the presence of the jury occurred during the state's direct examination of Dr. Bays, who raised the subject as part of her description of the child's interview. Defense counsel then referred to the subject in his objections to that testimony.

Defendant did not "solicit" the subject of coaching during examination of a witness or otherwise "introduce" it in evidence. Cf. *Hall v. Banta*, 283 Or 387, 390, 583 P2d 1139 (1978) (after subject was "solicited" by one party on cross-examination, other party could develop that subject); *Kentner v. Gulf Ins. Co.*, 298 Or 69, 73, 689 P2d 955 (1984) (party cannot introduce evidence in trial court and then claim on appeal that the same evidence is inadmissible). Neither did defendant later offer that same evidence himself for another reason. Cf. *State v. Brown*, 299 Or 143, 152-53, 699 P2d 1122 (1985) (party who makes later mention of subject for an independent reason cannot claim error in respect to original offer of such evidence). Defendant did not "invite" the admission of the disputed testimony in this case.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for a new trial.[8]

---

[7] As it happened, the child testified first; the court permitted her parents to remain in court during her testimony.

[8] Defendant's second assignment of error concerns a condition of probation imposed on him by the trial court. Because of our disposition of the case, we need not reach that assignment.