Keith HOGLUND, Appellant/Defendant,

v.

STATE of Indiana, Appellee/Plaintiff.

No. 90A02–1005–CR–591.

Court of Appeals of Indiana.

Feb. 22, 2011.

Transfer Granted May 20, 2011.

John Pinnow, Special Assistant to the State Public Defender, Greenwood, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant/Defendant Keith Hoglund appeals from his conviction of and sentence for Class A felony Child Molesting.[1] Hoglund contends that the trial court abused its discretion in admitting testimony regarding whether the victim was falsifying or exaggerating stories of Hoglund's molestation of her, whether the trial court abused its discretion in sentencing him, and whether his fifty-year sentence is inappropriately harsh. We affirm.

### FACTS AND PROCEDURAL HISTORY

In 1997, Hoglund met Teresa Malott in a Fort Wayne nightclub, and the couple married later that year. On February 20,

---

1. Ind.Code § 35–42–4–3(a)(1) (2001–2004).

1998, A.H., the couple's first daughter was born. Beginning when A.H. was four or five years old, Hoglund caused her to fellate him. The fellatio occurred until after A.H.'s seventh birthday; A.H. testified that it occurred two to three times a week. Hoglund would rub flavored substances onto his penis and occasionally ejaculate into A.H.'s mouth. Hoglund also showed A.H. pornographic movies depicting oral sex, told her that her mother viewed her with "disgust" and cared more about her younger sister and half-brother than her, promised to give her money and toys, and told her that she would be "covered in black and blue" and that he would go to jail if she told anyone about their activities. Tr. pp. 34, 78. After A.H. told Hoglund that she no longer wanted to fellate him, she asked him if he would ever force her younger sister to fellate him, and he responded, "I don't know, maybe." Tr. p. 30.

On May 4, 2006, the State charged Hoglund with two counts of Class A felony child molesting. At trial, pediatrician Carol Butler, mental health counselor Christine Ottaviano Shestak, and clinical psychologist Amanda Mayle, who met with A.H. in March of 2006, January of 2007, and July and August of 2009, respectively, all testified. During Dr. Butler's testimony, the following exchange occurred:

> [Prosecutor]: Dr. Butler, in the time that you dealt with [A.H.] and interviewed her and examined her, based upon that experience and your training and experience as a doctor and pediatrician, do you believe that [A.H.] was, is prone to exaggeration or fantasiz[ing] in sexual matters?
>
> [Hoglund's objection overruled]
>
> [Dr. Butler]: When it comes to sexual, speaking about sexual matters, I may answer this actually in more in generality than in specific in a sense that an eight year old is not going to come, I don't believe an eight year old would come into a physician's office to speak about sexual fantasies or made up stories. For almost anybody speaking about sexual issues even as an adult in a physician's office is an uncomfortable position and for an eight year old to come in and speak about that in my opinion is not usually a fantasy or a story. To be seven or eight and to have this knowledge is not usual. So I believe that what [A.H.] told me was the truth because of her age and because people don't—
>
> > [Hoglund's Counsel]: Again, I'm going to object as far as, a running objection Your Honor as far as what she is saying is the truth. That's the decision for the jury to make, not, or the fact finder, not for her to decide, this is not an opinion that she has the ability to make at this point as to whether or not a young witness on the stand is telling the truth. Again, a continuing objection as to any opinion as to whether or not she is telling the truth. Clearly inappropriate in the situation, that's for the fact finder to decide, not for this lady to make an opinion.
> >
> > [Prosecutor]: I would agree Your Honor—
> >
> > [Hoglund's Counsel]: It's a legal conclusion.
> >
> > [Prosecutor]:—(inaudible) for this witness, I would agree and concur.
>
> [Prosecutor]: Dr. Butler, I would ask you just, I'm going to redirect you to a different question.
>
> [Dr. Butler]: Okay.
>
> [Prosecutor]: Do you believe that [A.H.], based on your experience with her, is prone, was she prone to exaggerate or fantasize? That would be the question I guess.
>
> [Dr. Butler]: In regards to what she told me, no.

COURT: Ladies and gentlemen of the jury, I'm going to instruct you that her comment regarding her opinion whether [A.H.] was truthful or not is stricken from the record and you should treat it as if it had never been said.

[Prosecutor]: But the Doctor's opinion she gave afterwards—

COURT: That stands.

Tr. pp. 82–83.

During Shestak's testimony, the following exchange occurred:

[Prosecutor]: Ms. Shestak, based on your contacts with the victim, did you perceive any indication that she may have fabricated the story about her abuse out of some need?

[Hoglund's objection overruled]

[Shestak]: Her statements were congruent with her experience and I did not see anything that indicated that she had any need to tell this story.

Tr. p. 120.

Also during Shestak's testimony, the following exchange occurred:

[Prosecutor]: Ms. Shestak, in your interviews and meeting with the victim, [A.H.], do you believe that she is prone to exaggerate or fantasize in sexual matters?

[Shestak]: My clinical impression of this child was that there is a great deal of shame about what had happened to her and a great deal of anxiety about talking about it, about what would happen to her, what would happen to her dad if she talked and I did not feel there was any great exaggeration.

Tr. p. 133.

During Dr. Mayle's testimony, the following exchange occurred:

[Prosecutor]: Dr. Mayle, do you perceive any indication that [A.H.] may have fabricated this story of her abuse out of some need?

[Dr. Mayle]: No.

[Prosecutor]: Have you worked with other sexually abused children?

[Dr. Mayle]: Yes.

[Prosecutor]: Do you have any special training, experience or education in that area?

[Dr. Mayle]: Yes.

[Prosecutor]: Did you learn anything about [A.H.] which you believe would be inconsistent with a victim being a victim of child abuse?

[Dr. Mayle]: No.

Tr. p. 181.

The jury found Hoglund guilty as charged. On May 17, 2010, the trial court sentenced Hoglund to fifty years of incarceration for one count of child molesting.[2] The trial court found Hoglund's violation of a position of trust and that A.H. was less than twelve years old when the molestation occurred to be aggravating circumstances, Hoglund's lack of criminal convictions to be a mitigating circumstance, and that the aggravating circumstances "significantly" outweighed the mitigating. Sentencing Tr. p. 15.

## DISCUSSION AND DECISION

I. **Whether the Trial Court Abused its Discretion in Admitting Evidence Regarding the Likelihood that A.H. was Fabricating her Story of Child Abuse**

■ The admissibility of evidence is within the sound discretion of the trial

---

2. The State conceded at sentencing that Hoglund could not be sentenced on both counts due to double jeopardy concerns, even though the trial evidence indicated that Hoglund caused A.H. to fellate him two to three times a week during the period charged.

court. *Curley v. State*, 777 N.E.2d 58, 60 (Ind.Ct.App.2002), *trans denied*. We will reverse a trial court's decision on the admissibility of evidence only upon a showing of an abuse of that discretion. *Id*. An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id*. The Court of Appeals may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court. *Moore v. State*, 839 N.E.2d 178, 182 (Ind.Ct.App. 2005), *trans. denied*. We do not reweigh the evidence, and consider the evidence most favorable to the trial court's ruling. *Hirshey v. State*, 852 N.E.2d 1008, 1012 (Ind.Ct.App.2006), *trans. denied*.

 Hoglund contends that the admission regarding whether A.H. was fabricating her story of child abuse was an abuse of discretion requiring reversal.

No witness, whether lay or expert, is competent to testify that another witness is or is not telling the truth. *Shepherd v. State* (1989), Ind., 538 N.E.2d 242. In the context of child molesting, however, [the Indiana Supreme] Court has recognized that where children are called upon to describe sexual conduct, a special problem exists in assessing credibility since children often use unusual words to describe sexual organs and their function and since they may be more susceptible to influence. Therefore, testimony is allowed which permits

> some accrediting of the child witness in the form of opinions from parents, teachers, and others having adequate experience with the child, that the child is not prone to exaggerate or fantasize about sexual matters. Such opinions ... facilitate an original

> credibility assessment of the child by the trier of fact. . . .

*Lawrence [v. State ]*, 464 N.E.2d [923,] 925 [ (Ind.1984) ]. These adult witnesses are allowed to state an opinion as to the child's general competence and ability to understand the subject, *Settle v. State* (1988), Ind., 526 N.E.2d 974, but are prohibited from making direct assertions as to their belief in the child's testimony, as such vouching invades the province of the jury to determine what weight to place on the child's testimony. *Head v. State* (1988), Ind., 519 N.E.2d 151.

*Stewart v. State*, 555 N.E.2d 121, 125 (Ind. 1990), *abrogated on other grounds by Lannan v. State*, 600 N.E.2d 1334 (Ind.1992).

In this case, the three witnesses who testified regarding whether A.H. had a tendency to fabricate were a pediatrician, a mental health counselor, and a clinical psychologist. A parent or teacher, both of whom would have countless hours of contact with a child is distinguishable from a therapist or counselor, who may meet with a child for a few hours or less. In addition to cases involving parents and teachers, the case law recognizes that a therapist, social worker, psychologist, or even a police officer can fall under the *Lawrence* rule. *See, e.g., Stewart v. State*, 555 N.E.2d 121 (Ind.1990) (psychologist); *Stout v. State*, 528 N.E.2d 476 (Ind.1988) (psychiatric social worker); *Head v. State*, 519 N.E.2d 151 (Ind.1988) (counseling psychologist); *Krumm v. State*, 793 N.E.2d 1170 (Ind.Ct.App.2003) (psychologist and forensic interviewer); *Hook v. State*, 705 N.E.2d 219 (Ind.Ct.App.1999) (detective); *Ulrich v. State*, 550 N.E.2d 114 (Ind.Ct. App.1990) (psychiatrist); *Douglas v. State*, 484 N.E.2d 610 (Ind.Ct.App.1985) (psychiatric social worker). In summary, the case law recognizes that a witness can fall under the *Lawrence* rule if he or she either (1) knows the child very well or (2)

has had some experience with the child coupled with other relevant experience, such as having had extensive contact with many victims of child molestation.

In any event, Hoglund does not dispute that the evidence at issue here is indirect vouching by an expert under *Lawrence*. He argues, however, that *Lawrence* is no longer good law. Hoglund argues that *Lawrence* was effectively overruled by *Steward v. State*, 652 N.E.2d 490, 498–99 (Ind.1995). In *Steward*, the Indiana Supreme Court addressed the question of admissibility of evidence of Child Sexual Abuse Accommodation Syndrome ("CSAAS"), which deals with behaviors typical of child molesting victims. *Id.* at 499. The *Steward* Court held that CSAAS evidence could not be used to show that child abuse occurred, noting that "the reliability of such evidence for the purpose of proving abuse is at present extremely doubtful and the subject of substantial and widespread repudiation by courts and scientists." *Id.*

There are some similarities in the types of evidence at issue in *Lawrence* and *Steward*, as they both tend to bolster the credibility of child molestation victims. *Steward*, however, does not mention *Lawrence*, much less explicitly overrule it. Moreover, we conclude that the rationale for the *Steward* holding simply does not apply to the type of evidence at issue in *Lawrence* and this case. Hoglund does not claim, and there is no indication in the record, that any of the opinions expressed regarding the possibility of A.H. fabricating her story of molestation were based on anything of dubious reliability, as was the case in *Steward*. Unlike evidence regarding CSAAS, there is no indication of any widespread repudiation of the idea that persons who know a child very well, or experts who know the child and also have other relevant experience, can offer an opinion on the child's tendency to fabricate. While it may be that the Indiana Supreme Court will revisit *Lawrence*,[3] we conclude that its decision in *Steward* left it intact, and so it remains the law in Indiana.[4]

*Lawrence*, of course, still limits testimony regarding a child witness's credibility to "indirect" vouching. Indeed, the Indiana Supreme Court's more recent ruling in *Carter v. State*, 754 N.E.2d 877 (2001), reaffirmed the distinction between "indirect" and "direct" vouching in a similar context. *Id.* at 882–83. In *Carter*, which involved an autistic victim, the trial court allowed Dr. Robin Murphy, a psychologist specializing in autism, to testify essentially

3. It appears that the last time the Indiana Supreme Court addressed a *Lawrence* claim was in *Barger v. State*, 587 N.E.2d 1304, 1308 (Ind.1992).

4. In a citation of additional authority, Hoglund draws our attention to several foreign cases in which the courts have ruled similar evidence to be inadmissible. *See, e.g., Schutz v. State*, 957 S.W.2d 52, 59–73 (Tex.Crim.App. 1997) (testimony that child was not prone to fantasize), *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220, 1240 (1989) (testimony opining that child had not fantasized her abuse), *State v. Keller*, 315 Or. 273, 844 P.2d 195, 201–02 (1993) (testimony that there no evidence of leading or coaching of the witness or fantasizing), *State v. Brotherton*, 384 N.W.2d 375, 378–80 (Iowa 1986) (testimony by social worker that four-year-old child would not be able to fantasize sexual abuse), *but see U.S. v. Cacy*, 43 M.J. 214, 218 (CAAF 1995) (concluding that expert witness may testify regarding his "ability to discern whether a victim appears rehearsed or coached, or is feigning"). While we have no reason to doubt the *Schutz* court's assertion that "most jurisdictions specifically addressing expert testimony concerning manipulation and/or fantasy have held [it] to be an impermissible comment on a witness' credibility[,]" *Schutz*, 957 S.W.2d at 60, we note that none of the above authorities has precedential value in Indiana courts, while we are bound by the decisions of the Indiana Supreme Court.

that autistic children do not deliberately lie. *Id.* at 882. The Court acknowledged that "[a]lthough Dr. Murphy did not at any point directly state an opinion that M.C. was telling the truth, the jury could easily have drawn a logical inference: autistic children do not deliberately lie, M.C. is autistic, therefore M.C. is not lying." *Id.* The *Carter* Court unanimously concluded that Dr. Murphy's testimony "came close to, but did not cross the line into impermissible . . . vouching. Although her statements that autistic children find it difficult to deliberately deceive others may have been persuasive, the jury still had to draw its own inference as to whether M.C.'s story was an accurate account." *Id.* at 883. In summary, the trial court did not abuse its discretion in admitting testimony that indirectly vouched for A.H.'s credibility.[5]

## II. Whether the Trial Court Properly Sentenced Hoglund

### A. Abuse of Discretion

■■■ Hoglund's crime was committed between June of 2002 and April of 2005, and he is entitled to be sentenced according to the scheme in effect at that time, *Robertson v. State*, 871 N.E.2d 280, 284 (Ind.2007), which was Indiana's "presumptive" scheme, supplanted by the "advisory" scheme on April 25, 2005. *Edrington v. State*, 909 N.E.2d 1093, 1096 n. 2 (Ind.Ct. App.2009). Addressing the presumptive scheme, the Indiana Supreme Court held as follows:

> The Court in *Apprendi v. New Jersey* declared that "other than the fact of prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). As clarified in *Blakely*, the statutory maximum of which the Court spoke was "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely* [*v. Washington*], 542 U.S. [296, 303], 124 S.Ct. [2531,] 2537 [159 L.Ed.2d 403] [ (2004) ]. We recently held that *Blakely* was applicable to Indiana's sentencing scheme because our presumptive term constituted the statutory maximum as defined in *Blakely*. *Smylie v. State*, 823 N.E.2d 679, 683 (Ind.2005). Consequently, we held that to enhance a sentence under Indiana's then existing system "the sort of facts envisioned by *Blakely* as necessitating a jury finding must be found by a jury. . . ." *Id.* at 686.

*Blakely* is not concerned, primarily, with what facts a judge uses to enhance a sentence, but with how those facts are found. Under *Blakely*, a trial court in a determinate sentencing system such as

---

**5.** As previously mentioned, the following exchange took place during trial:

> [Prosecutor]: Did you learn anything about [A.H.] which you believe would be inconsistent with a victim being a victim of child abuse?
>
> [Dr. Mayle]: No.

Tr. p. 181. This testimony strikes us as the sort of behavioral evidence we approved in *Stout v. State*, 612 N.E.2d 1076, 1080 (Ind.Ct. App.1993), in which we concluded that "[e]xpert testimony that an individual's subsequent behavior is consistent or inconsistent with that observed from other victims is a type of evidence which is admissible." As previously mentioned, however, the Indiana Supreme Court later issued *Steward v. State*, 652 N.E.2d 490, 498–99 (Ind.1995), in which it rejected the admissibility of evidence of CSAAS. The question of whether *Steward's* holding would apply to behavioral evidence without use of the term CSAAS has apparently not been addressed by any appellate court in Indiana. Consequently, we would have felt constrained to follow *Stout* on this point had Hoglund raised a *Steward* challenge to the above testimony.

Indiana's may enhance a sentence based only on those facts that are established in one of several ways: 1) as a fact of prior conviction; 2) by a jury beyond a reasonable doubt; 3) when admitted by a defendant; and 4) in the course of a guilty plea where the defendant has waived *Apprendi* rights and stipulated to certain facts or consented to judicial factfinding. *See Blakely,* 542 U.S. at [303], 124 S.Ct. at 2537, 2541; *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 756, 160 L.Ed.2d 621 (2005).

*Trusley v. State,* 829 N.E.2d 923, 925 (Ind. 2005).

Hoglund contends that the trial court abused its discretion in finding that A.H. was less than twelve years old when she was molested to be an aggravating circumstance because the fact of her age was neither found by the jury nor admitted by him. We conclude, however, that Hoglund essentially did admit the fact used to support the finding of this aggravating circumstance, albeit not directly. Hoglund testified that he met Malott in 1997 and married her in June of that year. (Tr. 199). Hoglund also testified that A.H. was born after the marriage, which means that she could have been no more than five to eight years old between June of 2002 and April of 2005. (Tr. 199). Because Hoglund essentially admitted that A.H. was younger than twelve during the time period in question, this fact did not have to be proved to the jury before it could be used to enhance his sentence.

### B. Whether Hoglund's Sentence is Appropriate

■ We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State,* 849 N.E.2d 650, 660 (Ind.Ct.App.2006), *trans. denied* (citations and quotation marks omitted).

The nature of the offense here is that it represents but one in a series of repeated and particularly disgusting molestations that occurred over the course of several years; Hoglund did not simply fall victim to a demonic urge on one isolated occasion. A.H. testified that Hoglund caused her to fellate him two or three times a week over the course of approximately three years, which would place the total number of molestations in the *hundreds.*[6] Hoglund used emotional coercion and threats of physical violence to bend A.H. to his will, telling her that her mother viewed her with disgust and liked her siblings better and that she would be "covered in black and blue" if she told anyone. Tr. p. 78. After A.H. told Hoglund that she no longer wanted to fellate him, she asked if he would ever forcer her younger sister to fellate him; his response was, "I don't know, maybe." Tr. p. 30. The record indicates that A.H. has suffered extensive and long-term mental trauma as a result of Hoglund's molestation. A.H. has a "a lot of therapists [and] counselors, I usually talk to the school counselor a lot." Tr. p. 36. A.H. will never be able to live a normal life—her innocence has been irretrievably stolen from her and her own

---

**6.** Shestak testified that A.H. told her in January of 2007 that Hoglund had molested her twenty to thirty times over a three-year period but that A.H. also told her that she had difficulty remembering the number of times it had occurred.

biological father is as good as dead to her. As A.H. wrote to the trial court:

> Because of what my father did to me, I struggle to live a normal life. He took away my innocence and my childhood. Those things I will never get back.
>
> My Mom, brother and sister, have to live with my inability to have a normal life.
>
> Since I have a fear of trusting, they have to live with my sadness, confusion, depression and mood swings.
>
> Other girls get to spend time with their fathers. I have only memories of pain and endless questions of why.
>
> I have years of therapy ahead of me to repair my self esteem and to find a way to survive with what he has done to me.
>
> As I grow, I realize more and more how wrong it was for him to do the things he did to me.
>
> One reason I came forward was so he couldn't do the same to my sister[.] I ask that you do not give him another chance to hurt my sister or anybody else's little girl.

Appellant's App. p. 245.

As for Hoglund's character, it is that of a father who stole the innocence of his own four- or five-year-old daughter in order to satisfy his perverse sexual desires. Hoglund coerced and threatened A.H. into submitting to him, suggesting that her mother did not like her and threatening her with physical violence if she told anyone what he was causing her to do. Hoglund bribed A.H. into fellating him with money and toys and by allowing her to ride on the family "4–wheeler[.]" Tr. p. 29. Perhaps most disturbingly, after A.H. told Hoglund that she "didn't want to do it anymore[,]" he seems to have tried to secure A.H.'s continued compliance by suggesting that he would begin to molest A.H.'s younger sister instead. Hoglund

violated what should be the sacred trust between a father and daughter, seemingly with no care whatsoever for the devastating effect that violation would have on A.H.

Far from accepting responsibility for his crime, Hoglund told police that A.H. learned about oral sex by watching pornography that he had accidentally left in a VCR and by observing him and his wife engaged in oral sex several times. Hoglund even went so far as to blame A.H. for any fellatio that may have occurred, telling police that if it *had* happened, it was when he was "passed out sleeping and [she] took it upon herself." Tr. p. 152. Moreover, despite Hoglund's lack of prior criminal convictions, he admitted to frequent marijuana use and, as previously mentioned, the evidence at trial indicates that he molested A.H. with appalling frequency over the course of several years. In light of the heinous nature of his offense and his character, we conclude that the trial court's imposition of a fifty-year sentence was not inappropriate.

The judgment of the trial court is affirmed.

DARDEN, J., concurs in result with opinion.

BROWN, J., concurs.

DARDEN, Judge, concurring in result.

While I cannot disagree with the legal reasoning of the majority, I am troubled by the possible effect of the cumulative vouching testimony. As indicated above, even the stated exception for an adult having experience with the child does not allow the witness to make a direct assertion as to the witness' "belief in the child's testimony, as such vouching invades the province of the jury to determine what weight to place on the child's testimony." *Stewart v. State,* 555 N.E.2d 121, 125 (Ind.

1990), *abrogated on other grounds by Lannan v. State,* 600 N.E.2d 1334 (Ind.1992).

First, I note that the testimony of Dr. Butler provided in the majority opinion took place *after* several objections and colloquys. This began as follows:

State: Dr. Butler, in your examination and interview of [A.H.], in your expert opinion do you believe that she is prone to exaggerate or fabricate sexual matters?

Defense: I would object, Your Honor. I think her line of expertise is with regard to medicine, pediatric medicine. I don't think she has the ability at least from what I've heard of everything described as far as her medical background to make an opinion such as what he is asking her to do at this point today.

Court: Response [State]?

State: She has testified that she is a pediatric doctor, she has a specialty with young children, she has some experience dealing with children who have been sexually assaulted or abused. I guess she is not a counselor, but she did interview the child, she is experienced in this area and she deals with children every day.

Court: Anything further [Defense]?

Defense: Yes, Your Honor. If this were a situation [sic] I think we would use a doctor in every case we have that has the ability to see whether or not a child has the ability to tell the truth or not tell the truth in a situation. That's not something she has the ability to do, no lie detector test has the ability to do that either. Again, I would object to any response on her part, she is not qualified to determine whether or not this girl is telling the truth.

Court: Would you ask the question again [State] and then I'll rule.

State: Yes, Your Honor, I will also cite some authority for the Court as well.

Dr. Butler, in your interview and examination of [A.H.] did you in your expert opinion, did you believe that she is prone to exaggerate or fantasize in sexual matters?

Defense: Again, I'm going to object—I apologize, I'll let him finish the question, I apologize.

State: And the Your Honor, I would cite *Wright v. State,* it's 581 N.E.2d 978 is one case and a line of cases that stem from that decision. *Wright v. State* affirmed by (inaudible) *v. State,* 1995, *Stewart v. State* found that's not vouching.

Court: Anything further [Defense]?

Defense: Yes, Your Honor. As far as, first could I ask her a couple of quick questions as far as foundational?

Q: Ma'am, how long did you see this young lady in your office?

A: Over an hour.

Q: Over an hour?

A: Uh huh.

Q: On one occasion?

A: Uh huh.

Defense: Again, Your Honor, I object to the line of questioning. One opportunity to meet ... with an alleged victim, a little bit over an hour and to be able to give an opinion as to whether or not this young lady is telling the truth or is prone to fantasy I don't think is an appropriate line of questioning for her to give an opinion on. I simply don't think she's got the foundational background to give an opinion such as that based on her medical expertise. And again, I would object to any opinion from her regarding something along those lines of questioning.

Court: Anything further?

State: No, Your Honor.

Court: Objection overruled. You may answer the question Dr. Butler.

(Tr. 81–82).

As can be seen, the trial court did not promptly rule on Hoglund's initial objection. Moreover, Dr. Butler's answer—to which defense counsel again objected—expressly stated that she "believe[d] that what [A.H.] told [her] was the truth...." (Tr. 82). Thus, Dr. Butler expressed her "belief in the child's testimony," or impermissibly "vouch[ed]" for the testimony of A.H. *Stewart*, 555 N.E.2d at 125.

The defense again objected; another colloquy followed; and the State *agreed* that the answer would be a legal conclusion. Nevertheless, the trial court *did not* rule on the objection and allowed the State to ask "a different question." Tr. 83. The State then asked, "Do you believe that [A.H.], based on your experience with her, is prone, was she prone to exaggerate or fantasize? That would be the question I guess." *Id.* Dr. Butler answered, "In regards to what she told me, no." *Id.*

*At this point,* the trial court instructed that jury "that her comment regarding her opinion regarding whether she was truthful or not is stricken from the record and you should treat that as if it had never been said." Tr. 83. Unfortunately, the jury was now asked not to hear a bell that it had already heard rung several times.

Following Dr. Butler's testimony, the jury heard the testimony of Christine Shestak, a licensed mental health counselor who had also interviewed A.H. After establishing her credentials and that she had met with A.H. on two occasions, as quoted by the majority, Shestak was asked whether "based on [her] contacts with the victim," she "perceive[d] any indication that she may have fabricated the story about her abuse out of some need." (Tr. 120). When the defense objection was overruled, Shestak answered that A.H.'s

"statements were congruent." *Id.* "Congruent" is defined as "in agreement." WEBSTER'S THIRD NEW INT'L DICTIONARY 479 (4th ed.1976). To me, Shestak effectively expressed her belief in A.H.'s account. Moreover, following her answer to this question, Shestak subsequently testified at length as to "the details" provided by A.H. *Id.* at 122.

Although, as stated, I find the cumulative vouching testimony heard by the jury to be troubling, there is "no entitlement to a perfect trial." *Camm v. State*, 908 N.E.2d 215, 237 (Ind.2009) (Shepard, C.J., dissenting); *see also Riley v. State*, 489 N.E.2d 58, 61 (Ind.1986); *White v. State*, 257 Ind. 64, 77, 272 N.E.2d 312, 319 (1971). Thus, the critical question to me is whether the vouching testimony of Dr. Butler and Shestak was so prejudicial to Hoglund that reversal is required. Considering the totality of the circumstances—specifically, the articulate and detailed testimony of A.H., and Hoglund's own testimony as to how A.H. would not have been aware of such details without having personally experienced them with him—I conclude that the vouching testimony was not ultimately so prejudicial as to require reversal. Therefore, I respectfully concur in the result.