POWERS, P. J.
*456 Father appeals from the juvenile court's judgment asserting jurisdiction over his four-year-old child, A, based on child suffering unexplained physical injuries. Father raises a number of assignments of error challenging the juvenile court's determination, including that the juvenile court erred in admitting *129 testimony of a pediatrician that commented on the child's credibility. The Department of Human Services (DHS) concedes that the pediatrician's testimony constituted impermissible vouching and further concedes that the juvenile court's error was not harmless. We accept DHS's concessions on both points, and reverse the jurisdictional judgment.
Father and mother engaged in a contentious custody battle over child, in which they each contacted DHS to report concerns about each other. For instance, father called DHS in February 2018 to report concerns about an incident of domestic violence in mother's home. In May 2018, after noticing a bruise on child's face, mother called a DHS case-worker who instructed mother to take A for an examination at Liberty House, a child assessment center.
Dr. Hedlund, a pediatrician at Liberty House, examined child and observed a bruise on child's cheek, a cluster of bruises on child's left arm, some scratches on child's back and chest, and a scar on child's chin. During the examination, child told Hedlund that father caused the forearm bruise, that father hit and punched child, and that father pushed child into a shelf that resulted in the scar on child's chin. Hedlund testified that she did not follow up on child's statements because she was not a forensic interviewer. Hedlund made four diagnoses of child, including a diagnosis of "highly concerning for physical abuse."
Six days later, child returned to Liberty House for a follow-up interview with a child forensic interviewer. Hedlund testified that, during a forensic interview, the child is alone in the room with the forensic interviewer and there are also video cameras. Hedlund further explained that the medical provider sits in a separate room to take notes for the forensic interviewer and to observe the interview, which she did in this case. When questioned about her *457 diagnosis of "highly concerning for physical abuse," the following exchange took place:
"[DHS's counsel]: And can you say to a reasonable degree of medical certainty that the bruise happened due to a nonaccidental injury?
"[Hedlund]: Based on [child] saying "Daddy did it," I-I trust a child when they say something like that.
"[Father's counsel]: Object as vouching. Move to strike.
"THE COURT: It's overruled.
"[Hedlund]: One of the hard pieces with diagnosing and why we use the phrase "highly concerning" and not "definitive this is," is because I didn't see it happen, so the injuries are consistent with what [child] said. So that's why I made the diagnosis of highly concerning.
"* * * * *
"[DHS's counsel]: Okay. How do you, as a doctor, assess out whether the child has been coached by another parent to perhaps say something?
"[Hedlund]: That is very challenging. That often comes out more in the interview setting, because they ask those specific questions and they're able to. When I interact with a child, I ask a question, they answer rapidly without thinking about it. You know, it's-the child's being honest and telling you is the perception. If that makes sense.
"[Father's counsel]: I'm going to object as vouching. Move to strike again.
"THE COURT: It's overruled."
The juvenile court took the matter under advisement at the conclusion of the hearing and later issued a judgment asserting jurisdiction over child on the ground that, as to father, child "suffered unexplained physical injury while in the custody and care of Father."
On appeal, father advances four assignments of error, one of which is dispositive and obviates the need to address his other assignments of error. In his fourth assignment of error, father argues that the juvenile court erred in overruling his objections to Hedlund's testimony as impermissible vouching. See, e.g. , *458 State v. Middleton , 294 Or. 427, 438, 657 P.2d 1215 (1983) ("[I]n Oregon a witness, expert or otherwise, may not give an opinion on whether he [or she] believes a witness is telling the truth. We reject testimony from a witness about the credibility of another witness[.]"). DHS concedes that *130 Hedlund's objected-to testimony should have been excluded as an impermissible comment on the credibility of another witness. DHS further concedes that the juvenile court's error is not harmless. Those concessions are well taken.
In State v. Beauvais , 357 Or. 524, 543, 354 P.3d 680 (2015), the Supreme Court explained that "[a] direct comment on the credibility of a witness or a statement that is 'tantamount' to stating that another witness is truthful is not admissible, even if it is offered as part of a discussion of an admissible medical diagnosis." More recently, the court explained that
"when a party objects to testimony as improper vouching, a court must determine whether the testimony provides an opinion on truthfulness or, instead, provides a tool that the factfinder could use in assessing credibility. *** If a court determines that testimony constitutes vouching because it provides an opinion about the truthfulness of another witness and not information that could be helpful to [the factfinder] in forming [its] own opinion[ ] about that subject, the court must prohibit the testimony. If the testimony does not provide such an opinion, the court must then consider any other objections to the testimony that are raised by the parties.
State v. Black , 364 Or. 579, 593, 437 P.3d 1121 (2019). Applying the foregoing, we conclude that the juvenile court erred.
Although DHS concedes that both of Hedlund's statements were vouching, Hedlund's second statement-regarding a child answering "without thinking about it" because "the child's being honest and telling you is the perception"-arguably could be a tool that the factfinder could have used in assessing credibility. We need not resolve that issue, however, because we reverse the judgment based on the admission of Hedlund's first statement and because, as we will explain, the issue will not arise again in the context of this case.
*459 We readily conclude that Hedlund's first statement that "I trust a child when they say something like that" is a direct comment on child's credibility. Thus, we hold that the juvenile court erred by admitting Hedlund's testimony that provided an opinion on the truthfulness of another witness. Moreover, because the central issue before the juvenile court was whether father physically abused child and Hedlund's impermissible vouching testimony attempted to speak authoritatively to that issue, we further conclude that the error was not harmless. See, e.g. , State v. Keller , 315 Or. 273, 286, 844 P.2d 195 (1993) (concluding that a medical doctor with extensive professional experience in the area of child sexual abuse that testified authoritatively and in a detailed manner while commenting on a child's credibility "presumably was persuasive to the trier of fact" and therefore not harmless).
Finally, having concluded that the juvenile court erred and that the evidentiary error is not harmless, we turn to the appropriate disposition. While father's appeal was pending and before DHS filed its brief, the juvenile court terminated the wardship and issued a judgment of dismissal after a review hearing. See generally ORS 419B.449 (providing for review hearings by the juvenile court). DHS does not move to dismiss this appeal as moot, however, because of the potential effects this judgment may have on father's rights in the future. Accordingly, because no further proceedings are necessary, we simply reverse the juvenile court's judgment.
Reversed.