Argued and submitted March 4, 2013, affirmed July 23, petition for review denied November 20, 2014 (356 Or 517)

JASON WRIGHT,
*Petitioner-Appellant,*

*v.*

Mark NOOTH,
Superintendent,
Snake River Correctional Institution,
*Defendant-Respondent.*

Marion County Circuit Court
07C21678; A147501

336 P3d 1

Erin Galli argued the cause for appellant. With her on the brief was Chilton & Galli, LLC.

Patrick M. Ebbett, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Schuman, Senior Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

Petitioner appeals a general judgment denying his petition for post-conviction relief. He asserts that the post-conviction court erred in failing to conclude that he was denied adequate assistance of counsel under Article I, section 11, of the Oregon Constitution, and under the Sixth Amendment to the United States Constitution. We affirm.

Petitioner was convicted by a jury of first-degree kidnapping, ORS 163.235, and attempted first-degree rape, ORS 163.375. After an unsuccessful appeal, petitioner brought this petition for post-conviction relief, claiming inadequate assistance of trial counsel in 100 separate instances, inadequate assistance of appellate counsel in 13 separate instances, prosecutorial misconduct in three separate instances, and trial court error in 21 separate instances. After a trial at which petitioner offered his deposition testimony, the post-conviction court denied petitioner's claim. On appeal, petitioner assigns error to the post-conviction court's decision on only three of his arguments of inadequate assistance of trial counsel.[1] Those arguments pertain to whether his trial counsel performed inadequately by failing to object to the testimony of two women who encountered petitioner on the same night that petitioner committed the acts against the victim and by failing to allow petitioner to testify at the criminal trial.

We begin our review by noting one aspect of the post-conviction court's ruling that affects how we review the assorted arguments. In this case, the post-conviction court made detailed findings of fact on petitioner's argument pertaining to whether trial counsel had ignored petitioner's desire to testify at trial. As to all the other arguments, the post-conviction court denied them "for the reasons set forth in defendant's [(the state's)[2]] trial memorandum." Petitioner's first two arguments, pertaining to the admission of testimony of the two women, were among those arguments about which the court made limited findings of fact. Our review

---

[1] Petitioner did not assign error to the post-conviction court's dismissal of any of the other allegations raised in his petition for post-conviction relief.

[2] Throughout the remainder of this opinion, defendant will be referred to as the state.

of post-conviction proceedings is for errors of law. *Peiffer v. Hoyt*, 339 Or 649, 660, 125 P3d 734 (2005). We are bound by a post-conviction court's findings of fact if supported by evidence in the record. *Chew v. State of Oregon*, 121 Or App 474, 476, 855 P2d 1120, *rev den*, 318 Or 24 (1993). As to the first two arguments, where "there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the ultimate conclusion made by the trial court." *Id.* at 476-77.

With that in mind, we recite the facts pertinent to petitioner's arguments regarding the testimonial evidence. The victim was a 19-year-old woman who had been at a wedding reception in downtown Baker City, where she had consumed enough alcohol to make her heavily intoxicated. Around midnight, she joined a group that was leaving the reception to go to other bars in the same area. She and another member of the group got in an argument as they were walking toward the bars, and she left the group, eventually sitting down by herself in a downtown alleyway.

The next thing the victim could remember was waking up in a hotel room where she was lying on a bed. She went to the door to leave the room, when petitioner, whom she had not seen in the room, stopped her and pushed her up against the wall and began choking her with enough strength that she had trouble breathing. He told her to stop struggling, and, once she did, he released her and told her that she had consented to have sexual intercourse with him and she could not leave until she did. The victim told petitioner she would die first before she agreed to his request for sexual intercourse. Petitioner then requested that the victim give him a "blow job" instead, which she also refused. For the next few hours, petitioner kept the victim in the room with him, repeatedly insisting that she had agreed to have sexual intercourse with him. The victim conversed with petitioner during this time, telling him that he could not keep her locked in this room, to which he replied that he could not let her go, because she would run, and "they always run." The victim tried to escape two or three times more, but, each time she tried to unlock the door, petitioner

would push her against the wall and choke her until she stopped struggling.

Eventually, the victim was able to convince petitioner to let her out of the motel room, on the agreement that she would not report him to the police and would have breakfast with him. When petitioner opened the door, the victim ran out of the room, crossed the street to a gas station, and received assistance from a station attendant there until she was sure she was safe from petitioner. Petitioner was eventually arrested, indicted, and, after a jury trial, convicted of attempted rape and kidnapping.

During the trial, the trial court admitted the testimony of two women, J and K, who had encountered petitioner earlier on the same night in downtown Baker City. J and K each testified that they had walked out of a bar to get some fresh air and that petitioner had come out of the bar after them. He approached them, saying that he needed them to pay for a motel room and that he wanted them to come with him to the room. Petitioner then made sexual remarks to J about her breast size and asked K if he could "eat her," which referred to, K testified, deviate sexual intercourse. The two women ignored him, and, as they walked back into the bar, petitioner grabbed K's arm. In her testimony, K said that she was surprised by petitioner's strong grip due to petitioner's physical disability—petitioner does not have forearms; his hands are connected at his elbows.[3] She pulled her arm away and walked into the bar. J and K did not have further contact with petitioner that evening.

Petitioner argued below, and argues now on appeal, that his trial counsel should have objected to the admission of that evidence as inadmissible prior bad acts evidence. Petitioner argues that his trial counsel's failure to object violated petitioner's right to adequate counsel under Article I, section 11, and his right to objectively reasonable counsel under the Sixth Amendment.[4]

---

[3] Petitioner described his condition as "missing [his] forearms from about [his] elbow. My elbow is attached to my hands and I have like about half the size of a normal hand. I have little fingers. *** I don't have the gripping strength."

[4] Article I, section 11, provides, in pertinent part, "In all criminal prosecutions, the accused shall have the right *** to be heard by himself and counsel."

Under Article I, section 11, a criminal defendant has a right to counsel, which includes "the right to 'an adequate performance by counsel of those functions of professional assistance which an accused person relies upon counsel to perform on his behalf.'" *Niehus v. Belleque*, 238 Or App 619, 622, 243 P3d 808 (2010), *rev den*, 349 Or 602 (2011) (quoting *Krummacher v. Gierloff*, 290 Or 867, 872, 627 P2d 458 (1981)). In order to prevail on his claim under Article I, section 11, petitioner must prove, by a preponderance of the evidence, that "(1) counsel performed deficiently and (2) counsel's deficient performance prejudiced the petitioner, that is, that it had a tendency to affect the result of the trial." *Niehus*, 238 Or App at 623. Where, as in this case, the claim is based on a trial counsel's failure to object to the admission of evidence, we consider whether an objection "would have been well taken when the criminal case was tried," and whether, "given the totality of the circumstances, the admission of the objectionable evidence had a tendency to affect the jury's verdict." *Logan v. State of Oregon*, 259 Or App 319, 327, 313 P3d 1128 (2013), *rev den*, 355 Or 142 (2014).

Under the Sixth Amendment, petitioner must prove that his trial counsel's representation "fell below an objective standard of reasonableness" and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 US 668, 688, 694, 104 S Ct 2052, 80 L Ed 2d 674 (1984). The tests, under both constitutions, to determine the adequacy of counsel are functionally equivalent. *Montez v. Czerniak*, 237 Or App 276, 278 n 2, 239 P3d 1023 (2010), *aff'd*, 355 Or 1, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014).

Evidence of a prior bad act is admissible if it is relevant "to some material issue in the charged crime." *State v. Pyle*, 155 Or App 74, 82, 963 P2d 721, *rev den*, 328 Or 115 (1998). Such evidence cannot be offered "to prove the character of a person in order to show that the person acted in conformity therewith." OEC 404(3). Petitioner argues that

---

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."

the purpose of the evidence from J and K was to create an inference that petitioner was a "lewd man desperate for a sexual encounter. This is precisely what is not permitted." The state counters that this evidence was relevant and admissible for nonpropensity purposes and that, regardless of whether the evidence should have been admitted, the testimony of J and K was unlikely to have affected the verdict, and therefore, petitioner was not prejudiced by his trial counsel's failure to object.

Assuming, for the sake of argument, that trial counsel should have objected to evidence of petitioner's sexual advances toward J and K, we agree with the state, that in considering the totality of the circumstances, this evidence did not have a tendency to affect the result of the proceeding and, therefore, petitioner was not prejudiced by trial counsel's failure to object to the evidence. *Logan*, 259 Or App at 327; *see also Cunningham v. Thompson*, 188 Or App 289, 296, 71 P3d 110 (2003), *rev den*, 337 Or 327 (2004).

Whether petitioner was prejudiced by the admission of J's and K's testimony is a question of law, *Logan*, 259 Or App at 327, based on an extensive consideration of the evidence presented by both the state and petitioner at the criminal trial, *Harris v. Morrow*, 186 Or App 29, 38, 63 P3d 581, *rev den*, 335 Or 479 (2003). Furthermore, as we explained in *Cunningham*, our consideration includes "any other aspects of the criminal trial that are pertinent to the issue * * * considered in light of the issues at trial in their entirety[.]" 188 Or App at 296.

In this case, any potential prejudice from the admission of J's and K's testimony must be considered in light of petitioner's theory of defense. *See Adams v. Nooth*, 239 Or App 613, 617-18, 245 P3d 173 (2010), *rev den*, 350 Or 130 (2011) (considering the petitioner's defense theory in concluding that trial counsel acted reasonably). At the criminal trial, the uncontroverted testimony of witnesses other than the victim included evidence from the motel desk clerk that petitioner arrived some time before 4:00 a.m., driving a van, and that he wanted to rent a motel room for "his girlfriend" and himself. Further uncontroverted testimony from the service clerk at the gas station was that, around 5:50 a.m.,

the victim came into the gas station, crying and asking for help to get home; that petitioner appeared soon thereafter, saying, "Well, come on and I'll take you to breakfast;" and that the victim did not respond to petitioner's request.

In light of that evidence, petitioner's trial counsel focused his defense on the state of mind of both petitioner and the victim when they were in the motel room together. Trial counsel outlined his theory of the case in the opening statement, explaining that the anticipated evidence would show that the victim voluntarily came with petitioner to the motel room and that petitioner intended to have *consensual* sexual relations with the victim and, therefore, he did not have the requisite intent for attempted rape or kidnapping. The emphasized "anticipated evidence" included that petitioner was physically incapable of taking the victim against her will,[5] or holding her against her will, that the victim was left alone in the van while he rented the motel room at the service desk, and that the motel walls were thin, so any noise of a struggle would have been heard by residents in the neighboring motel rooms. The anticipated evidence also included that petitioner "repeatedly asked [the victim] to engage in sexual intercourse or sexual acts. We don't believe there's going to be any [testimony] that he intentionally tried to force her to compel her to perform a sexual act. * * * [A]ny force [petitioner] used was to keep [the victim] there in the room so he could continue to ask her to try and get her to change her mind."

In other words, petitioner's defense theory pertained to his lack of physical strength to confine the victim, evidence of the victim's voluntary presence with petitioner, and evidence of his subjective intent to have *consensual* sexual relations with the victim. Petitioner offered evidence in support of each facet of his defense. As to his physical inability to confine the victim, petitioner called an expert who had tested petitioner's lifting strength and grip strength and had concluded that petitioner would be unable to lift dead weight that would have equaled the victim's weight and that the grip strength in his hands was very low. The expert

---

[5] We note that the state's theory for the kidnapping count was not dependent on the fact that she was transported to the hotel room, but that she was secretly confined where she was not likely to be found, ORS 163.225(1)(b).

explained that, without forearms, petitioner's strength is significantly less than that of the average male of petitioner's age. Petitioner further elicited testimony on cross-examination from the victim that she had played high school sports, was currently a fire fighter in the forest service, and was in good physical shape.

As to the victim being voluntarily with petitioner, petitioner elicited testimony on cross-examination from the motel desk clerk that the victim was alone in the van while petitioner rented the room. Petitioner further offered testimony from one of the motel's maids that the motel room walls were thin and that one would be able to hear loud voices and a person bumping against a wall in the next room.

As to petitioner's subjective intent, petitioner elicited testimony on cross-examination from the motel desk clerk that petitioner had signed his real name and address when he rented the motel room, and defense counsel argued in his closing statement that using defendant's real name and address indicated that he was expecting consensual sexual intercourse with the victim. On cross-examination of the victim, counsel elicited testimony that petitioner had asked the victim 15 to 20 times for consensual sexual intercourse or sexual acts while he kept her in the motel room.

In essence, petitioner's defense was that the victim, who had been heavily intoxicated and could not remember how she had arrived at a motel room, had voluntarily ridden in the van with petitioner to a motel, voluntarily stayed in a motel room with him for at least two hours in the early morning, during which time petitioner asked the victim 15 to 20 times for sexual intercourse or sexual acts—all of which the victim refused—and that the victim eventually left the motel room and went to a gas station crying and asking for help. Petitioner never denied that he was focused during the entire episode on having sex with the victim. In fact, trial counsel actually used the testimony of J and K to support his theory that petitioner had sexual intent but was not a rapist. Trial counsel argued:

"Another thing that indicates [petitioner's] intent, was that—was his statements to the—the women downtown, [J] and [K]. * * * [T]hat was offered against him to show

him—show that he had sexual intent. Well *** he did have sexual intent. He wanted to have sex with somebody *** and he had asked those women, straightforward *** and *** when he approached them, he asked for sex, will you go to a motel with me and *** I want to eat you or eat your crotches—I mean there was—there was no deception on his part. And maybe it was blunt and maybe it was offensive to these people, but there was no doubt in their minds what his intentions were or what he wanted to do. *** Maybe not the most tactful *** maybe offensive to them, but very direct and very straightforward."

Given that theory of the case—which petitioner does not argue was unreasonable—we cannot conclude that the admission of J's and K's testimony was prejudicial to him. Again, petitioner's only "prejudice" argument with regard to J's and K's testimony is that it "cast petitioner in a bad light and made it easier for the jury to believe that he was lewd enough to commit rape." Yet, petitioner's own trial theory acknowledged facts from which a jury would readily find that he was desperate for a sexual encounter with the victim and had behaved in a lewd manner toward her, leaving the jury to decide whether defendant intended to use force to have his desired sexual encounter. Considering the distinctions that trial counsel drew between sexual intent and the intent to rape, as well as undisputed evidence that petitioner was desperate for a sexual encounter (asking the victim more than 15 times to consent, and requesting a blow job if she would not have intercourse), we are not persuaded that the additional evidence of petitioner's lewdness or desperation had a tendency to affect the outcome of petitioner's trial.[6] That is, as the issues were framed at trial, J's and K's testimony was unlikely to have colored the jury's view of petitioner in a way that harmed his case. We therefore

---

[6] Indeed, the evidence arguably bolstered petitioner's theory of the case--at least according to petitioner's trial counsel, who relied on the evidence during closing argument. Nonetheless, we appreciate that there is some tension in assuming that counsel should have objected to the admission of the evidence, while at the same time relying on trial counsel's use of that evidence during opening and closing arguments. The tension results, in part, from the fact that neither party has addressed (or foreclosed) the possibility that trial counsel made a strategic decision to allow J's and K's testimony as support for his defense theory. Because it is not briefed, we do not further discuss the reasonableness of such a strategy, if it indeed was a strategic choice not to object to the admission of the evidence.

reject petitioner's arguments on the ground that he failed to demonstrate that he was prejudiced by his trial counsel's failure to object to evidence of his sexual advances toward J and K.[7]

Next we turn to petitioner's final argument: Trial counsel was inadequate because petitioner had wanted to testify at trial, but his trial counsel failed to call him as a witness. The post-conviction court made extensive findings of fact on this issue, reviewing the trial transcript and trial counsel's affidavit. The post-conviction court found that petitioner was instructed repeatedly by the trial court of his right to testify and that he should consult with his trial attorney in that regard. The post-conviction court also found petitioner's argument not credible that he had told his counsel he wanted to testify and that counsel had ignored his request. There is evidence in the record to support those findings, and we are therefore bound by them. *Chew*, 121 Or App at 476. Consequently, we conclude that trial counsel was not inadequate in failing to allow petitioner to testify and that petitioner was not denied his right to adequate assistance of counsel under either the state or federal constitutions. The post-conviction court therefore did not err in denying his claim for post-conviction relief.

Affirmed.

---

[7] J and K also testified that petitioner grabbed K by the arm when she tried to walk away from him. Petitioner has not argued that the evidence of the sexual advances, when coupled with evidence that petitioner grabbed K by the arm, created a risk that the jury would infer that petitioner uses force to facilitate sexual contact. The record is sparse regarding the nature of the arm grab, and, in any event, we will not develop a prejudice argument that petitioner has never advanced.

We note that, at oral argument, petitioner conceded that the testimony of the two women regarding petitioner's grip strength was relevant to rebut petitioner's evidence and theory that he lacked the physical strength to confine the victim. However, because we hold that petitioner failed to prove he was prejudiced by the admission of J's and K's entire testimony, we need not address the effect of that concession.