Submitted March 11, affirmed October 22, 2014, petition for review denied February 5, 2015 (356 Or 689)

TERRY DARRELL SMITH,
*Petitioner-Appellant,*

*v.*

Steve FRANKE,
Superintendent,
Two Rivers Correctional Institution,
*Defendant-Respondent.*

Umatilla County Circuit Court
CV101060; A149418

337 P3d 986

James N. Varner filed the opening brief for appellant. Terry Darrell Smith filed the supplemental brief *pro se.*

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Tiffany Keast, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

SERCOMBE, P. J.

**SERCOMBE, P. J.**

Following a jury trial, petitioner was convicted of first-degree sodomy, ORS 163.405, first-degree sexual abuse, ORS 163.427, and using a child in a display of sexual conduct, ORS 163.670.[1] He subsequently filed a petition for post-conviction relief, alleging, among other things, that his trial attorney was constitutionally inadequate in failing to object when a police officer testified that the alleged victim knew the difference between the truth and a lie. The post-conviction court denied the petition, and petitioner appeals the resulting judgment, asserting that counsel was constitutionally inadequate in failing to object to what petitioner asserts was "improper vouching testimony of a state's officer witness." In his *pro se* supplemental brief petitioner also raises three additional assignments of error which we reject without discussion. We affirm on petitioner's remaining assignment of error because we conclude that petitioner's trial counsel did not render constitutionally inadequate assistance in failing to object to the testimony at issue.

We state the facts consistently with the findings of the post-conviction court, which are binding on us to the extent that there is evidence in the record to support them. *Logan v. State of Oregon*, 259 Or App 319, 321, 313 P3d 1128 (2013). To the extent that the post-conviction court did not make explicit findings, we state the facts in a manner consistent with its ultimate conclusion. *See Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).

The charges against petitioner in the underlying criminal trial related to petitioner's sexual abuse of his eight-year-old daughter, S, while she visited him during the summer. In particular, petitioner and his wife, who both lived overseas, came to Oregon for the summer in 1999 and spent time camping and visiting with S and petitioner's older daughter, C. On a number of occasions during their visit, petitioner sexually abused S and, on one of those occasions, petitioner took sexually explicit photographs of S.

---

[1] Defendant was also convicted, based on a guilty plea, of failing to register as a sex offender. *Former* ORS 181.599 (1999), *renumbered as* ORS 181.812 (2013).

A couple of weeks after the conclusion of the visit, S disclosed the sexual abuse to her mother, Brooks. Both S and C were interviewed at the Child Advocacy Center by Bedell, a detective with the Oregon State Police.

Petitioner was later indicted for, among other things, two counts of first-degree sodomy, one count of first-degree sexual abuse, and one count of using a child in a display of sexually explicit conduct. However, at that time, defendant was outside of the United States and he was not arrested until several years later. By the time the case was brought to trial, S was 16 years old.

S, C, Brooks, and Officer Bedell testified at the trial. There was no physical evidence of abuse presented. S described the time she spent with petitioner during the summer of 1999 and detailed the incidents of sexual abuse. Bedell testified about the interviews of S in the fall of 1999. In particular, Bedell's testimony described S's disclosures of sexual abuse during the interviews. She also testified as follows:

"Q.   *** [W]hen you talk with a child that's eight years old the first time at the advocacy center do you go through truth and a lie and how important that is?

"A.   Yeah, that's a very important part of interviewing a child and I talk to the children about what it means to tell the truth and what it means to tell a lie, and I try to—I ask the child to articulate in their own words what that means, to tell the truth and then tell a lie and then sometimes we'll have them demonstrate, and I remember demonstrating with [C] that she knew what it meant to tell the truth. And like I would say something to her like, 'Your pants are yellow, would I be telling the truth if I said—would I be telling the truth or a lie if I said your pants were yellow?' knowing that her pants are blue. And she would respond that that would be a lie. So having her demonstrate to me that it knew what it meant to tell the truth and what it meant to tell a lie.

"Q.   Now was that with [C] and with [S]? Did you do the same type of thing?

"A.   Yes.

"Q.   And so [S] was able to explain to you the difference between truth and lie?

"A.    She demonstrated to my satisfaction that she knew what it was to tell the truth and what it was to tell a lie.

"Q.    So when you met with them [during an additional interview]—that's back at the advocacy center again?

"* * * * *

"Q.    And you go through the same kind of protocol with them about truth and lie?

"A.    I did with [S]. And we talked again [about] what it meant to tell the truth and what it meant to tell a lie. Just because it is an important part of the process."

Ultimately, the jury found petitioner guilty of all the charges at issue. Petitioner appealed, and we affirmed his convictions. *State v. Smith,* 227 Or App 289, 205 P3d 890 (2009), *rev den,* 347 Or 533, *cert den,* 560 US 954 (2010).

Petitioner then sought post-conviction relief asserting, among other things, that his trial counsel was "ineffective by failing to object when Detective Bedell vouched for the testimony of the alleged victim[] when [s]he testified that the alleged victim[] knew the difference between the truth and a lie." After a hearing, the post-conviction court denied the petition.

As relevant here, the post-conviction court concluded that the testimony at issue was "merely explaining the way [the officer] questions a minor to establish preliminary competency." According to the court, the officer's testimony did not "have to do with" whether the child was telling the officer the truth but, instead, had to do with whether a child has "the capability of telling the truth or knowing the difference," which is "relevant * * * when a child witness is being questioned, because of competency issues." Accordingly, the court concluded that the testimony was not "vouching."

As noted, on appeal, petitioner contends that the post-conviction court erred "in denying petitioner's formal petition for post-conviction relief based on petitioner's claims of ineffective assistance based on trial counsel's failure to object to improper vouching testimony of a state's officer witness." In particular, citing *State v. Milbradt,* 305 Or 621, 630, 756 P2d 620 (1988), he asserts that the detective's testimony "concerning whether the victim knew the difference

between a lie and the truth when making allegations of sexual abuse against petitioner (which were not supported by any physical evidence), is clearly tantamount to giving an opinion of whether the victim in this case was telling the truth, and is thus inadmissible."

The state, for its part, asserts that Bedell's testimony "did not express an opinion as to whether the detective thought the victim was being truthful or was lying" and, therefore, "did not constitute improper vouching for the credibility of another witness." Thus, according to the state, trial counsel's failure to object "did not constitute deficient performance." In addition, the state asserts that "a vouching objection would not have been sustained" and, accordingly, "petitioner also failed to prove that counsel's not objecting prejudiced him." Reviewing the post-conviction court's conclusions for errors of law, *Lotches v. Premo*, 257 Or App 513, 514, 306 P3d 768, *rev den*, 354 Or 597 (2013), we agree with the state that the testimony in question did not constitute improper vouching and that trial counsel did not render inadequate assistance in failing to object on that basis.

The standards for determining the adequacy of counsel's representation are "functionally equivalent" under the state and federal constitutions. *Montez v. Czerniak*, 237 Or App 276, 278 n 1, 239 P3d 1023 (2010), *aff'd*, 355 Or 1, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014); *see also State v. Davis*, 345 Or 551, 579, 201 P3d 185 (2008). To prevail on a post-conviction claim regarding inadequate assistance of counsel under Article I, section 11, of the Oregon Constitution, a petitioner must show, by a preponderance of the evidence, that counsel failed to exercise reasonable skill and judgment and that petitioner suffered prejudice as a result. *Hale v. Belleque*, 255 Or App 653, 659, 298 P3d 596, *adh'd to on recons*, 258 Or App 587, 312 P3d 533, *rev den*, 354 Or 597 (2013). Similarly, to prevail on a claim for relief based on ineffective assistance of counsel under the Sixth Amendment to the United States Constitution, a petitioner must show "that trial counsel's performance 'fell below an objective standard of reasonableness *** under prevailing professional norms' and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"

*Hale*, 255 Or App at 659 (quoting *Strickland v. Washington*, 466 US 668, 694, 104 S Ct 2052, 80 L Ed 2d 674 (1984)) (omission in *Hale*).

To establish a claim "based on a trial counsel's failure to object to the admission of evidence, a petitioner must establish that the objection would have been well taken when the criminal case was tried." *Logan*, 259 Or App at 327.[2] A petitioner must also establish "that, given the totality of the circumstances, the admission of the objectionable evidence had a tendency to affect the jury's verdict." *Id.*

At the time of petitioner's criminal trial in 2007, the law was clear that, "in Oregon a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth." *State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1982). As the court explained in *State v. Keller*, 315 Or 273, 284-85, 844 P2d 195 (1993), "this rule applies whether the witness is testifying about the credibility of the other witness in relation to the latter's testimony at trial or is testifying about the credibility of the other witness in relation to statements made by the latter on some other occasion or for some reason unrelated to the current litigation." *See also Milbradt*, 305 Or at 630 (an opinion "that a person is not deceptive, could not lie without being tripped up, and would not betray a friend (to wit: the defendant) is tantamount" to an impermissible opinion regarding whether the witness believes another witness is telling the truth); *State v. Brown*, 297 Or 404, 443, 687 P2d 751 (1984) (no witness may pass on the credibility of another witness). Those cases, however, do not support petitioner's contention that Bedell's testimony at issue was an impermissible comment on the victim's credibility. Rather, they demonstrate, as the state asserts, that testimony constitutes improper vouching when a witness "gives a direct or indirect opinion

---

[2] Because counsel's performance is evaluated as of the time of trial, we generally limit our analysis to the "law in effect at the time of [a] petitioner's criminal trial." *Logan*, 259 Or App at 328 n 6. As we explained in *Hale*, "the postconviction court's standard of review is a highly deferential one." 255 Or App at 659. Thus, "'[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Id.* (quoting *Strickland*, 466 US at 689) (brackets in *Hale*).

on whether he or she believes the other witness is telling the truth or is truthful."

Thus, in *Milbradt*, the Oregon Supreme Court addressed testimony by a psychologist "that when interviewing the [alleged victims in the case] regarding their accusations he found no evidence of deception and that what they were reporting represented their experience." 305 Or at 625. The court held that that testimony constituted improper vouching and should have been excluded. Similarly, in *Keller*, which involved the sexual abuse of a young child, the court evaluated testimony from a doctor that, during her interview with the child, "'[t]here was no evidence of leading or coaching or fantasizing'" and that "the child was 'obviously telling you about what happened to her body.'" 315 Or at 285 (brackets in original). Applying the rule articulated in *Middleton* and *Milbradt*, the court concluded that "[e]ach of those statements amounts to testimony that the child was credible." *Id.*

In contrast to those cases, here, Bedell's testimony did not concern whether she considered S to have been credible or truthful during the interviews. She did not give an opinion—either direct or indirect—regarding whether S was truthful. Her testimony concerned an entirely distinct matter. That was whether S, who was an eight-year-old child at the time of the interviews, appeared to know the difference between the truth and a lie at that time. As set forth above, in her testimony, Bedell explained that an important part of interviewing a child is to go over the difference between the truth and a lie. She testified that she has the child articulate in their own words what it means to tell the truth and what it means to tell a lie. Then she will have the child demonstrate his or her understanding of those concepts by asking, for example, whether it would be a lie to say the child is wearing yellow pants when the child's pants are, in fact, blue. According to Bedell, based on that exchange during the interview, S "demonstrated *** that she knew what it was to tell the truth and what it was to tell a lie."

That testimony did not touch on Bedell's opinion regarding whether S was actually truthful during the interview. Testimony that a child demonstrated knowledge of the

difference between the truth and a lie does not amount to testimony that the child did not lie, nor does it otherwise pass on the credibility of that child either directly or indirectly. Instead, the testimony pertains to the competency of the child. Thus, unlike the testimony at issue in *Milbradt* and *Keller*, the testimony here was not an impermissible comment on the credibility of a witness and trial counsel was not inadequate for failing to object on that basis.

In light of the foregoing, the trial court did not err in denying the petition for post-conviction relief.

Affirmed.