Argued and submitted November 15, 2021, affirmed January 20, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ABIGAIL MINJUNG KIM,
*Defendant-Appellant.*

Multnomah County Circuit Court
18CR20126; A171036

503 P3d 1272

David F. Rees, Judge.

Stephen A. Houze argued the cause for appellant. Also on the briefs was Jacob G. Houze.

Joanna Hershey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Aoyagi, Judge, and Armstrong, Senior Judge.

PER CURIAM

Affirmed.

## PER CURIAM

Defendant was convicted of second-degree rape, second-degree sodomy, and first-degree sexual abuse. On appeal, she raises four assignments of error, challenging several evidentiary rulings and a jury instruction. We affirm.

*First assignment of error.* Defendant argues that the trial court erred in denying her motion to suppress evidence obtained from her cell phone. The trial court denied the motion on the basis that defendant voluntarily consented to the search of her phone. Defendant maintains that she did not voluntarily consent or, alternatively, that the search exceeded the scope of her consent. Having reviewed the record, we reject those arguments and conclude that the trial court did not err in denying the motion to suppress.

*Second assignment of error.* Defendant contends that the trial court erred by allowing vouching testimony over her objection. "Vouching" is the expression of one's personal opinion about the credibility of a witness and is prohibited by judicial rule. *State v. Chandler*, 360 Or 323, 330-31, 380 P3d 932 (2016). Witnesses are categorically prohibited from expressing a view on whether another witness is "telling the truth," because credibility determinations are the exclusive province of the jury. *State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983).

Defendant was charged with committing sexual crimes against an autistic 13-year-old boy, K. At trial, K's treating psychologist testified regarding his observations of "the impact of autism on [K]." As relevant here, the psychologist said that K "gets into a lot of imaginary things" and wants to be a scientist. When asked if K is able to come back to reality when redirected, even though he "gets very absorbed in these ideas about space and aliens and things of that nature," the psychologist said yes and talked about K's school performance. When asked if K is able to recount things that have happened to him, the psychologist said yes, that K has a good memory, and gave examples of K being able to tell him every school that he has attended, which ones he liked, where he has lived, and what those cities are like. When asked if K was able to discuss those things

without incorporating his fantasy world, the psychologist answered that K "can be very real when it comes to, where do you live, what school do you go to, where are you going to live next, would you rather live here, rather live there."

The psychologist further testified that, if you give K a book that is not interesting to him, K will probably read a few paragraphs, get distracted, and need someone to get him on track. But he can read three paragraphs and tell you what he read. Asked if K can recount past events accurately, the psychologist testified to his experience with K being that he "can get [K] back on topic easily"; that K "has a very clear idea about who he is, where he lives, what his brothers are doing, what his father does"; that K can answer questions about what happened at school or on the weekend; and that K is pretty "reality based," such that his imaginative tendency "doesn't shape his whole orientation." Finally, asked if K has "a psychotic disorder," the psychologist said he did not think so, explaining that a psychotic disorder is "when there's a major distortion in some form of reality which interferes with daily functioning," such as paranoia or schizophrenia, and K does not have that. The prosecutor then moved on to a different line of questioning.

Defendant contends that the trial court should have excluded some of the foregoing testimony as vouching. We disagree. "Admittedly, it is not always easy to draw the line between an inadmissible statement that is tantamount to a direct comment on the credibility of a witness and an admissible statement that is relevant for a different reason but that tends to show that a witness is telling the truth." *State v. Beauvais*, 357 Or 524, 545, 354 P3d 680 (2015). Here, however, we agree with the state that the witness was commenting generally on K's mental *capacity* to describe past events accurately, not expressing a view on whether K's accusations against defendant were truthful. *Cf. Smith v. Franke*, 266 Or App 473, 479-80, 337 P3d 986 (2014), *rev den*, 356 Or App 689 (2015) ("Testimony that a child demonstrated knowledge of the difference between the truth and a lie does not amount to testimony that the child did not lie, nor does it otherwise pass on the credibility of that child either directly or indirectly. Instead, the testimony pertains to

the competency of the child."). The trial court did not err in allowing the testimony.[1]

*Third assignment of error.* Defendant argues that the trial court plainly erred by not acting *sua sponte* to exclude a police officer from testifying to the meaning of certain Korean phrases contained in the internet search history from defendant's cell phone, which was admitted as Exhibit 11. As an exception to the preservation requirement, we may correct "plain error" on a discretionary basis. ORAP 5.45(1). An error is "plain" when it is an error of law, the legal point is obvious and not reasonably in dispute, and it is not necessary to go outside the record or select among competing inferences. *State v. Terry*, 333 Or 163, 180, 37 P3d 157 (2001), *cert den*, 536 US 910 (2002). Here, the police officer was a native Korean speaker but admitted to limitations in his proficiency with written Korean. Because of those limitations, there were two words in defendant's search history—which the officer identified during his testimony—that the officer did not recognize and had to look up. Having reviewed the record, we conclude that any error was not *plain*. In the absence of an objection by defendant, the court did not err in allowing the testimony.

*Fourth assignment of error.* Defendant asserts that the trial court plainly erred by instructing the jury that it could return nonunanimous guilty verdicts. That instruction was plainly erroneous. *See Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020) (holding that, under the Sixth Amendment to the United States Constitution, a criminal defendant may be convicted of a serious offense only by unanimous verdict). However, because the jury returned unanimous verdicts on all counts, the instructional error was harmless. *See State v. Flores Ramos*, 367 Or 292, 334, 478 P3d 515 (2020) (holding that error in instructing jury

---

[1] We note that the record demonstrates that the trial court was sensitive to the risk of vouching. When the state later began asking K's psychologist questions related to the alleged sexual abuse, the court removed the jury and had an extended colloquy with the witness and the prosecutor about the expected testimony. The court told the witness that he could testify only from personal knowledge. The court also strongly cautioned the witness that neither he nor anyone else could say that K was telling the truth, that K "was truthful about this or that," that K's reports of sexual abuse were accurate, or otherwise "vouch" for K. The court instructed the witness only to recount what K had said to him.

that it could find the defendant guilty by nonunanimous ver-
dict was harmless, where a jury poll showed that the ver-
dict was unanimous). We therefore reject defendant's fourth
assignment of error.

Affirmed.